**IN THE COURT OF APPEALS OF IOWA**

No. 23-0886
Filed July 26, 2023

**IN THE INTEREST OF K.C.-P. and L.P.,**
**Minor Children,**

**K.P., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Linn County, Cynthia Finley, District
Associate Judge.


　　A mother appeals the termination of her parental rights to two children.
**AFFIRMED.**


　　Morgan Fritz of Iowa Legal Aid, Cedar Rapids, for appellant mother.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, for appellee State.

　　Julie Gunderson Trachta, Cedar Rapids, attorney and guardian ad litem for
minor children.


　　Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to two children. She argues that termination of her parental rights is not in the children's best interests and an extension of time for reunification efforts should be granted. Alternatively, the mother asserts a guardianship should be established with the maternal grandfather. We determine termination of the mother's parental rights is in the children's best interests and an extension of time is not warranted. We also conclude termination of the mother's parental rights, rather than a guardianship, is the appropriate permanency option. Accordingly, we affirm.

## I.    Background Facts & Proceedings

K.C.-P. was born in May 2019, and L.P. was born in September 2020. L.P. was born prematurely at twenty-two weeks gestation with many medical needs. In October 2021, law enforcement had contact with the family due to a physical altercation between the children's mother and her boyfriend. A visiting nurse service was discontinued that same month because the mother missed so many appointments and would not allow the nurses into the home. The children came to the attention of the Iowa Department of Health and Human Services (HHS) in November 2021 concerning an allegation against the mother for failure to provide adequate medical care for L.P. The mother was missing appointments that were critical for L.P. as a result of his premature birth. A child abuse assessment was founded against the mother for denial of critical care.

The family again came to the attention of HHS the following month when medical providers determined that the mother was not giving L.P. necessary oxygen and not following through with physical and occupational therapy for L.P.

The State filed petitions alleging the children to be in need of assistance (CINA) in December 2021. Both children were adjudicated the following month pursuant to Iowa Code section 232.2(6)(c)(2) and 232.2 (6)(e) (2021). A formal removal from parental custody was not requested, and the children remained in the custody of their mother following adjudication and following disposition of February 15, 2022.

But in the months that followed, the mother struggled to attend medical appointments for the children and to participate in recommended services. And in late September 2022, L.P. presented in the emergency room with a spiral fracture of his left femur and a subarachnoid hemorrhage. L.P. also tested positive for ingestion and exposure to THC. The mother provided an explanation for the fracture, and while medical staff acknowledged that the fracture could have possibly been accidental, the injury was not consistent with the explanation given by the mother. The mother could not provide an explanation for L.P.'s subarachnoid hemorrhage. The mother was also uncooperative, refusing to tell HHS where K.P. was located.

An emergency removal order was filed on October 6. The State moved to modify the dispositional order, which was granted following hearing. The children were placed in the custody of HHS and placed in relative care with the maternal grandfather. A child abuse assessment was founded against the mother for physical abuse and presence of illegal drugs in a child. The children have not returned to the mother's custody since the initial removal, and there have been no trial home placements with the mother. The mother's visitation with the children remained fully supervised.

Several months after being placed with the maternal grandfather, the children were moved to foster care due to concerns regarding the medical needs of the children not being met in the grandfather's home. The mother continued to struggle with case plan expectations and reunification services. While the mother was ordered to participate in drug testing, she only tested in two out of twenty-eight opportunities; one of the tests was positive for THC, and the other test was negative. The mother failed to attend any medical appointments for her children after the removal from her custody.

The State filed a termination petition on March 29, 2023. A permanency hearing was held in early April 2023, but the mother failed to attend. At the time of the termination hearing, the mother had yet to complete a mental health evaluation that was ordered in November 2022. And the mother had made little, if any, progress in addressing the children's needs. At the termination hearing, she testified that L.P.'s subarachnoid hemorrhage was a result of L.P. hitting his head often due to his fragility and lack of strength. The mother admitted to the use of an illegal substance a month before the termination hearing.

Following an evidentiary hearing, the court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2023). The fathers' parental rights were not addressed in the termination order.[1] The mother filed a timely notice of appeal.

---

[1] The district court noted that the biological fathers of the children were unknown and that service by publication had been completed on all unknown fathers. But due to newly obtained information regarding potential fathers, the rights of the fathers would be addressed in a separate order. This appeal does not concern the parental rights of any father.

## II.     Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge any of the three steps, we need not address it on appeal. *See P.L.*, 778 N.W.2d at 40.

## III.    Discussion of Legal Issues

### A.  Best Interests of the Children

As the mother does not challenge a statutory ground relied on for termination, we turn first to her best-interests argument. When considering a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

We conclude termination of the mother's parental rights is in the children's best interests. Since being placed in foster care together, both children are thriving. The mother has not meaningfully addressed her substance abuse issues, she has not completed a mental health evaluation, and is unable or unwilling to address L.P.'s physical injuries and specialized medical needs. Termination is in the children's best interests.

**B. Extension of Time for Reunification Efforts**

Contained within the mother's best-interests argument, she asserts she should have been granted an extension of time to work on reunification efforts. A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). An extension of time may be granted if the court "determin[es] that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* (citation omitted).

We agree with the district court that an extension of time is not warranted on these facts. Given the mother's lack of compliance with case plan goals during the pendency of the CINA case, we cannot determine that the need for removal of the children from the mother's custody will no longer exist at the end of an additional six-month period.

**C. Guardianship with Maternal Grandfather**

The mother argues that in lieu of termination, a guardianship should be established with the maternal grandfather. She asserts,

> A guardianship in place of a termination of parental rights would serve the best interests of the minor children and their current and future needs. It would allow the minor children to get the stability and permanency that they need with their current placement, as well as

allowing [the mother] additional time to progress so that she can be reunited with her children.

We begin with the premise, given the age of the children, that a guardianship is not a preferable option.

> Importantly, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). If the court transferred guardianship and custody to the child's maternal grandparents, they would have to report to the court at least annually, and the guardianship would not terminate until the child reaches the age of majority—sixteen years from now. *See* Iowa Code § 232.117(6)–(8) (setting out requirements for the guardian to report to the court); *id.* § 232.118(3) (providing that "[t]he authority of a guardian appointed by the court terminates when the child reaches the age of majority or is adopted").

*In re A.S.*, 906 N.W.2d 467, 477–78 (Iowa 2018).

The record before this court is that although the children were initially placed in the maternal grandfather's care, they were moved due to concerns in the home. And while the mother's petition on appeal recites that the children have been placed back in the maternal grandfather's care, such is outside our appellate record. But even if we could consider such factor, this record does not support a determination that a guardianship is the appropriate permanency option given the young age of the children and the lack of permanency involved in the very nature of a guardianship. We determine that termination of the mother's parental rights is the appropriate permanency option for these two children.

## D. Permissive Exceptions

The mother, as part of her guardianship argument, makes a passing reference to two permissive exceptions located in Iowa Code section 232.116(3), namely section 232.116(3)(a) and (c). But without more than this passing reference, we are unable to determine the facts the mother claims support her

argument, if in fact the mother is making such argument with respect to permissive exceptions.[2]  Because we cannot play the role of advocate, we decline to address the permissive exceptions referenced in the mother's petition on appeal.  *See In re E.D.*, No. 16-0829, 2016 WL 4379382, at *7 (Iowa Ct. App. Aug. 17, 2016); *see also Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy.  This role is one we refuse to assume.").

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[2] Iowa Code section 232.116(3)(a) is applicable when a relative has legal custody of a child, which is not applicable to this appeal as, at the time of the termination hearing, custody of both children remained with HHS.  Iowa Code section 232.116(3)(c) contains a permissive exception the court can invoke to preserve the parent- child relationship due to the closeness of a bond, upon a determination that termination would be detrimental to the child.